## BROWN *vs.* TUTTLE.

An action for a fraudulent warranty was maintainable at the common law, and it has been held to be maintainable under the Code. And if an action will lie for a fraudulent warranty, a counter claim, by way of defence, for the same matter, must be maintainable.

At common law, a purchaser of goods could recover damages for a breach of the warranty, if he failed in proving the fraud. And damages for a breach of warranty may now be recovered, under an answer setting up a counter claim by reason of a breach of a fraudulent warranty.

To make a vendor responsible upon either a warranty or a false representation, it must be established that the warranty was given, or the representation made, of the existence of some quality, or the absence of some defect, that would enhance the value of the property, and be calculated to induce the purchaser to buy. In other words, it must be material.

The complaint or answer should set out the warranty or representation; and neither can regularly be proved, if not alleged. But if no objection is made, the party alleging the warranty or fraud may prove other and different ones from those alleged, and he will be entitled to have the pleading amended, so as to make it conform to the proof.

A warranty is an affirmation by the seller that the property proposed to be sold belongs to him, or is of the description or quality alleged. The allegation must be made at or before the sale; must be of something that is material, and calculated to induce the purchaser to buy. It must not be mere matter of opinion.

When a vendor represents property offered for sale as possessing certain important qualities whereby it is rendered more valuable, and by reason of which the purchaser is induced to buy, and it turns out that the property does not possess those qualities, the representation thus made is fraudulent; and the purchaser, to establish the fraud, need not prove that the vendor *knew* that the representation was false, when made.

There is no distinction between a warranty and a fraudulent representation.

It is not necessary, ordinarily, to use the words "fraud" or "fraudulent," in a pleading; it is enough if equivalent words are used—words which clearly impute fraud. But, as in actions for fraudulent representations there are cases in which proving the representations does not establish fraud, it becomes necessary, in such cases, to charge distinctly that the representations were fraudulent as well as false.

During a negotiation between the plaintiff and defendant, for the sale by the former to the latter of a quantity of rhubarb plants, known as wine plants, the plaintiff told the defendant that he had been in the business of making wine from plants of that kind, and had been offered $2 per gallon for his wine; that there were 500 roots, and each hill would yield a gallon of wine; that the rhubarb would make better wine than grape wine; that he had tested the making of wine from the plants, and knew there was no mistake;

that it was just as he had told the defendant. *Held* that although the plaintiff did not say he warranted the roots to be roots of the wine plant, the representations made amounted to a warranty, both of kind and quality. That at all events, the question whether there was a warranty should have been submitted to the jury. MORGAN, J., dissented.

*Held, also,* that the representations, being alleged and proved to be false, were fraudulent.

MOTION by the defendant for a new trial, upon a case and exceptions directed to be heard at a General Term in the first instance.

The action was brought upon a promissory note given by the defendant for the purchase price of five hundred rhubarb plants sold by the plaintiff to the defendant.

The answer alleged that the plaintiff represented and warranted that these plants were wine plants, and were not the ordinary rhubarb or pie-plant, and that said plants were valuable for wine producing purposes, and would produce a valuable high flavored wine in largely paying quantities, whereas in truth and in fact said plants were nothing but the rhubarb or pie-plant, and would not produce any valuable high flavored wine, nor any wine, and said plants were utterly without value for the purpose of producing wine, for which sole purpose the plaintiff sold them to defendant, as the plaintiff well knew, and for which purpose only the defendant did purchase said plants, relying entirely upon the warranty and representations of the plaintiff. The answer further alleged that the plaintiff warranted and represented that he had been engaged in the business of making wine from said plant ; that he had made wine in the quantity per acre in the answer set forth ; that for what he had made he had been offered $2 per gallon in the village of Rome, and could get $3 per gallon in the city of Utica; which representations the answer alleged were utterly false. The answer further alleged that, relying upon such representations, said defendant purchased said plants, and set them out upon his land, and expended a considerable amount of time, labor,

Brown *v.* Tuttle.

material and money in the effort to produce wine from said plants. But it was impossible to produce any wine of any value from said plants. All of which the answer set up by way of recoupment or counter claim.

The action was tried at a circuit, before Justice Morgan and a jury.

Evidence was given by both the plaintiff and defendant, and the court directed a verdict for the plaintiff for the amount claimed in the complaint.

The defendant asked to go to the jury, upon these questions: 1st. That there is a warranty and a breach, to the defendant's damage. That there was evidence upon which the jury could find a warranty and a breach. 2d. That these were representations which were false, and known to the plaintiff to be false, and that the defendant relied upon them, and sustained damage.

The court refused to allow the defendant to go to the jury upon said questions.

To this ruling and decision the defendant excepted.

*E. L. Stevens*, for the appellant.

*C. W. White*, for the respondent.

MULLIN, J. This action was brought to recover the amount of a note made by the defendant and delivered to, and held by, the plaintiff. The making of the note was conceded. The defence set up in the answer, and insisted upon at the trial, was that the note was given for the price of a quantity of rhubarb plants, known as wine plants, sold by the plaintiff to the defendant upon the representation and warranty that said plants were wine plants, and were not of the same species as the common rhubarb or pie-plant, but were of much greater value, and of an entirely different nature and variety, and that these plants would, in a single season, produce several thousand dollars' worth of a highly flavored

.wine, to the acre; whereas, in truth and in fact, said plants were nothing but the rhubarb or pie-plant, and would not produce any valuable, high-flavored wine, and were without value for the purpose of producing wine, for which purpose they were represented and warranted to be valuable, and purchased by the defendant.

The plaintiff, it is also alleged, represented and warranted, at the time of the purchase, that said plants would yield 500 gallons of rich, high-flavored wine to the acre. These. representations are alleged to be false.

This defence is to be construed as setting up, by way of counter claim, damages sustained by the defendant by reason of the fraudulent warranty by the plaintiff of the plants sold to the defendant.

An action for fraudulent warranty was maintainable at the common law, and it has been held to be maintainable under the Code. If an action will lie for a fraudulent warranty, a counter claim by way of defence, for the same matter, must be maintainable.

At common law the plaintiff could recover damages for a breach of the warranty, if he failed in proving the fraud, and I conclude that the damages for a breach of warranty may be recovered, under an answer setting up a counter claim by reason of a breach of a fraudulent warranty. The court held, after the evidence was all in, that no warranty was proved.

To make a vendor responsible upon either a warranty or false representation, it must be established that the warranty was given, or the representation made, of the existence of some quality, or the absence of some defect, that would enhance the value of the property, and be calculated to induce the purchaser to buy. In other words, it must be material.

The complaint or answer should set out the warranty or representation, and neither can regularly be proved if not alleged. But if no objection is made, the party alleging the warranty or fraud may prove other and dif-

Brown *v.* Tuttle.

ferent ones from those alleged, and he will be entitled to have the pleading amended, so as to make it conform to the proof.

The ruling of the court was not that a warranty was not alleged, but that none was proved. Let us examine the evidence, briefly, in order to see whether the judge's ruling was correct.

The defendant testified that he knew nothing about the rhubarb wine plants, and so told the plaintiff; that the plaintiff, during the negotiation for the sale, told him 'that he had been in the business, and had been offered $2 per gallon for his wine, in Rome. There were 500 roots, and each hill would yield a gallon of wine; that it (the rhubarb) would make better wine than grape wine, and the plant was better than the grape-vine. He said he tested it (making wine from the plants,) and knew there was no mistake; it was just as he told the defendant.

The warranty, if any, was of the kind and quality of the rhubarb roots sold. A warranty is an affirmation by the seller, that the property proposed to be sold belongs to him, or is of the description or quality alleged. The allegation must be made at or before the sale; must, as I have already said, be of something that is material and calculated to induce the purchaser to buy; it must not be mere matter of opinion.

The plaintiff did not say he warranted the roots to be roots of the wine plant, but he did aver that they yielded better wine than the grape, and they were better than grapes, and he was offered $2 per gallon, at Rome, for it. Stronger language could not well be used, as to the quality of the roots and of their product. He claimed to have planted them, and made from the plants produced by them wine for which he was offered the price named. I think the language of the plaintiff, testified to by the defendant, was a warranty both of kind and quality. At all events, the question whether it was a warranty should have been submitted to the jury.

The learned judge remarked, in disposing of the case, that it was very doubtful whether fraud was set up in the answer; and as he refused to submit the question of fraud to the jury, he must have held that none was proved.

The words *fraud,* or *fraudulent,* are not contained in the answer; and if one or the other is essential to a complaint or answer in which fraud is relied upon as a ground of recovery or defence, then this answer is defective, and fraud is not charged in it.

The question is again presented whether, when a vendor represents property offered for sale as possessing certain important qualities whereby it is rendered more valuable, and by reason of which the purchaser is induced to buy, and it turns out that it does not possess the qualities which the vendor represents it to possess, the representation thus made is fraudulent; or whether the vendee, to establish the fraud, must prove that the vendor *knew* that the representation was false, when made.

That a representation is fraudulent when it is known to be false at the time it is made, is too plain a proposition to require argument or authority to support it. If the representation was known to be true when made, it cannot contain the only element essentially necessary to render it fraudulent—falsity.

The only other alternative that could by possibility occur would be that the vendor did not know whether the representation was true or false. If in that alternative it is determined that the representation is fraudulent when it is proved to be false, it follows that the representations made by the plaintiff in this case were fraudulent because they were alleged and proved to be false.

This principle was settled in *Bennett* v. *Judson,* (21 *N. Y.* 238.) That was an action at law, for damages, for a false and fraudulent representation as to the situation and condition of certain lands lying in another

state. The representation was made by the defendant's agent, and he had learned from persons on whose word he could rely that the representations were true, and he believed them to be true, when made. They were however proved to be false, and the Court of Appeals held them to be fraudulent, notwithstanding the intention to defraud did not exist.

The principle thus established is essentially different from that of the common law which had been acted upon in this state up to the decision referred to. The common law required that knowledge of the falsity of the representation should be established, to entitle the party alleging the fraud to recover; or, when the representation related to matters which from their nature or the situation of the parties could not be supposed to be within the personal knowledge of the person making the representation, then an intention to defraud must be established.

The principle last mentioned is doubtless still the law, and commends itself to the approval of all reflecting minds.

When I am induced to purchase property by means of a representation by the seller that it possesses properties which render it valuable, and it turns out that it does not possess them, I am as effectually defrauded as if the seller knew he was cheating me, when he told the lie. To require me to prove that he knew of the falsity of the representation, when he made it, is to afford the wrong-doer a chance of escape from liability, and deprive me of the right to recover for damages actually sustained.

In the view of the law which I have endeavored to put forth, there is no distinction between a warranty, and a fraudulent representation.

A representation, the falsity of which will give a right of action, must be in relation to something which enhances the value of the property and induces the pur-

chaser to buy. If the untruth of the representation is evidence that it was fraudulent, then the only difference between the false representation and a warranty, is in the consequences of the recovery in the one form of action or the other. The recovery on the warranty is a recovery in an action on contract—that upon a fraudulent warranty is in tort, and the wrong-doer may be imprisoned. The complaints in the two cases will differ; in the one, fraud will be alleged, in the other not. Fraud is not alleged in the answer, in this case; hence the counter claim is of the damages resulting from a breach of warranty, and not from fraudulent representations.

It is not necessary, ordinarily, to use the word "fraud," or "fraudulent," in a pleading; it is enough if equivalent words are used—words which clearly impute fraud. But as in actions for false representations there are cases in which proving the representation does not establish fraud, it becomes necessary in such cases to charge distinctly that the representations were fraudulent as well as false.

The learned judge said that it appeared in the evidence that the defendant relied upon the paper given him by the plaintiff, in which directions were given as to the manner of planting and cultivating the roots and making the wine, and representations were made as to the quality of the wine, rather than what was said to him by the plaintiff.

In this I think the judge was mistaken. He was doubtless led into the error by the evidence of the defendant, who, after testifying that the plaintiff gave him a copy of the paper, was asked whether in purchasing he relied more upon it than upon the taste of the wine. He replied that he did not know that he relied more on one than the other. The judge doubtless understood him to say that he did not know that he relied more on the representation than the paper. The defendant admitted he had read the paper, and the plaintiff assured

him that the plants would do better, and make better wine, than the paper stated they would.

The plaintiff became liable for the representations on the paper as well as those made verbally; and in both there was contained a warranty as to the quality of the plants sold as rhubarb wine plants. At all events it should have been submitted to the jury whether there was a warranty, under proper instructions from the court.

There should be a new trial, with costs to abide the event.

BACON and FOSTER, JJ., concurred.

MORGAN, J., (dissenting.) I was very much embarrassed upon the trial of the action, by the form of the answer and the uncertainty of the evidence to establish either an actionable warranty or fraud, and directed a verdict for the plaintiff, without attempting to submit to the jury any particular question arising upon the pleadings and proofs.

Upon looking at the answer, I am unable to discover any averment that the plaintiff knew that his recommendations or assertions as to the wine plants sold to the defendant were false. In other words, there is no averment of a *scienter*, and I think I was right in refusing to submit to the jury the question of fraud.

The answer is remarkable for its general vagueness and uncertainty as to the particular matters upon which the defendant relies to sustain a warranty. The allegations of a warranty may be grouped together as follows: First, that the said plants were wine plants, and not plants known as rhubarb or pie-plant; secondly, that they were of much greater value; thirdly, that they would produce several thousand dollars worth of valuable high flavored wine to the acre; fourthly, that they would produce five thousand dollars to the acre and sell

for two dollars a gallon, and would improve 25 per cent. in two or three years ; and finally, that the plaintiff had been engaged in the business, and had made wine of the quality above mentioned, and had been offered two dollars a gallon for it.

On reading the testimony, I am unable to discover any evidence that there was a breach of the warranty as to the species of plant.    The plants sold the defendant were such as were known and designated as the wine plants, or that variety of the pie or rhubarb plant which had been used for manufacturing wine.    In this respect the case is entirely unlike that of *Passinger* v. *Thorburn*, (34 *N. Y.* 634.)

As to the productiveness of the plant, and the quality of wine which it would make, the defendant says he relied upon what the plaintiff told him.    In another place he says he tasted of the wine, and relied upon that, as well as upon what the plaintiff told him.    He had read the printed statement, and he says in another place that the plaintiff represented the value of the plant substantially as therein recommended.    In order to sustain this defence, the evidence should be sufficient to authorize the jury to find that the plaintiff warranted that the plant would produce the quantity and quality of wine set forth in the printed recommendations, and which were mentioned by the plaintiff, to induce the defendant to make the purchase ; that it was understood by the parties that the plaintiff intended to give his own personal warranty, and to answer in damages for a breach of the warranty.    If the defendant was satisfied without requiring a warranty, he cannot recover upon the mere representation of the quality by the plaintiff, unless he can show that such representations were bottomed on fraud.    (*Chitty on Con.* 393.)    Thus in many instances the positive representation of the seller is not, from the nature of the case, to be regarded as a warranty, but merely as an expression of an opinion on a matter of

Brown *v.* Tuttle.

which he could have no certain knowledge, and on which the purchaser was equally capable of forming an opinion. (*Id.*) To make an affirmation at the time of the sale a warranty, it must appear to have been so intended, and not to have been a mere expression of opinion. (*Id. note* 4.)

In my opinion there is no ground for assuming that either party expected or believed that the plants were sold with warranty. If the defendant had requested the plaintiff to be amenable in damages for the failure of his recommendations or the recommendations contained in the printed certificates, there is no one who can seriously believe that he would have assumed such an obligation.

I think the court have gone far enough in sustaining actions of this class, and in some cases have allowed the jury to presume a warranty from mere words of recommendation, when it was quite evident that no warranty was contemplated.

A purchaser in this class of cases must have some judgment, forethought and discretion, or the law will leave him without remedy. If the plaintiff had sold the defendant a different article from what he affirmed it to be, the case might come within that of *Passinger* v. *Thorburn,* (*supra.*) But having sold him the genuine rhubarb wine plant, such as was used for making wine, I do not think the recommendations reiterated from the printed certificates can be construed into a warranty. If the defendant relied upon this, it was his own folly. The motion for a new trial should be denied.

New trial granted.

[ONONDAGA GENERAL TERM, June 1, 1869. *Bacon, Foster, Mullin* and *Morgan,* Justices.]