Andrews, J.
The single question involved in this appeal is'whether, in an action against a principal to enforce a contract for the purchase of property, made by his agent, and to recover the agreed price, the principal can be arrested, on proof that the vendor was induced to enter into the contract and give the credit by means of the fraudulent representations- of the agent, where the fraud was not known to or authorized by the principal, and was not ratified by him, unless such ratification is to be inferred from the receipt and use by the principal of the property purchased, before he was informed of the fraud practiced by the agent.
This question depends upon the construction to be given to that part of the fourth subdivision of section 179 of the Code which authorizes an arrest “where the defendant has been guilty of a fraud in contracting the debt, or incurring the obligation upon which the action is brought.” The obvious purpose of this provision was to introduce an exception to the general rule prevailing in this State, forbidding arrest and imprisonment for debt, and to permit this *95 remedy in an action upon contract in the single case specified ; and the test of the liability to arrest in such an action is the guilt of the defendant in contracting the debt or incurring the obligation sued upon. There must have been a fraudulent purpose in contracting the debt or incurring the liability on the part of the defendant whose arrest is sought. He must have been guilty of a fraud, and this implies personal misconduct, moral" and actual, and not merely legal or constructive fraud, merely in respect to the transaction which is the subject of the suit. This construction is strengthened by the consideration that it harmonizes the statute with the general policy and legislation of the State. The act of April 26, 1831, “to abolish imprisonment for debt and to punish fraudulent debtors,” abrogated the system under which an innocent debtor, whose only fault might be his inability to pay his debts, could be deprived of his liberty and imprisoned at the instance of the creditor. It was a system of great severity, fruitful of oppression ; and its abolition was demanded by public sentiment, influenced by the growth of more just and humane views of the respective rights of creditors and their debtors. But the legislature excluded from the benefit of the act fraudulent debtors, by subjecting them to arrest in an action to recover the debt, and to commitment, “ as other prisoners, on criminal process,” until they procured their discharge in the manner provided by the act (§ 11). One of the grounds on which an arrest might be made under the act of 1831 was identical with that .stated in the provision of the Code under consideration, viz., that the defendant fraudulently contracted the debt or incurred the obligation respecting which the suit was brought. (§ 4, sub. 4.)
Statutes authorizing arrest and imprisonment for debt, although remedial in that they are designed to coerce, by means of the imprisonment, the payment of the creditor, are also regarded as penal, and ought not to be extended by construction so as to embrace cases not clearly within them. (Sturgis v. Crowningshield, 4 Wheat., 200; Von *96 Hoffman v. The City of Quincy, 4 Wal., 553.) The statute of 1831 and the provisions of the Code authorizing arrests are i/n, pari materia j and if the defendant can be arrested under the Code in an action ex contractu for the fraud of his agent, of which he was morally guiltless, in an action on the contract, I see no reason why he cannot be arrested and imprisoned, as a “ prisoner on criminal process,” under the act of 1831, which is still in force.
The order of arrest in this case is sought to be justified on the ground that the fraud of the agent acting within the scope of his authority is, in law, imputed to his principal The authority of the agent to make the contract for the purchase of the malt is not denied; and the rule is stated by Mr. Justice Stoby to be (Story Ag., § 134), that where the act of the agent will bind the principal, then his representations, declarations and admissions respecting the subject-matter will also bind him, if made at the same time and constituting a part of the res gestae. That the principal is liable for the fraudulent conduct and representations of the agent, made in the course of his dealings for the principal, where the principal has received and retained the fruits of the fraud, is affirmed by the general current of authority. (Hern v. Nichols, 1 Salk., 289 ; Crofoot v. Fowke, 6 M. & W., 358 ; Murray v. Mann, 2 Exch., 537; Bennett v. Judson, 21 N. Y., 238.) It is consonant with reason and justice that a principal should not be allowed to profit by the fraud of his agent; and if he adopts the contract made in his behalf, although ignorant of the fraud, he should be held liable to make compensation to the party injured by it. An action for the deceit in such a case was maintained in Bennett v. Judson ; and Comstock, J., was of opinion that, in point of pleading, the fraud might be charged as that of the defendant. In Udall v. Atherton (7 H. & H., 170) there is a very able discussion of the question, whether an action for deceit would lie in such a case against the principal, and the learned judges were equally divided in opinion. But admitting the right of the plaintiff to have brought *97 an action on the case for fraud and deceit against the defendant, it by no means establishes that he was guilty of a fraud in contracting the debt, within the provision authorizing an arrest, in an action on the contract. The plaintiff has abandoned the pursuit of his remedy, by action for the deceit, and has elected to rely on the contract, and the fraud is no part of the cause of action, but is extrinsic to it, and must be established aliunde to warrant an arrest and in this form of action it is personal and not imputed fraud which entitles the plaintiff to the order. The argument that the right to arrest, if the action had been for deceit, is to be taken into view in construing the provision in question is without force, when it is considered that, until the amendment of 1863, no arrest was authorized in an action for fraud or deceit against a resident of the State; and if the plaintiff’s construction is sound, then the defendant, before that time, could have been arrested in an action on the contract, although he could not have been in an action for the fraud. In short, the two provisions are not in construction dependent upon or connected with each other. Trover may, in many cases, be maintained against a person innocent of any intentional wrong (Spraights v. Hawley, 39 N. Y., 441), and, where trover will lie, an order of arrest in an action for the conversion may be issued.
But if the plaintiff should waive the tort, and bring assumpsit to recover the money received on the sale of the property, he could not arrest the defendant. The change in the form of the action would prevent it. The true construction of the provision of the Code referred to, does not, in my judgment, warrant an arrest, under the circumstances of this case.
The order should be reversed, and the order of Special Term affirmed.
All concur except Gboveb, J., dissenting, and Folgee, J., not voting.
Ordered accordingly.